[Docket No. 8]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

LEONARD CARMICHAEL,

          Plaintiff,

    v.

PENNSAUKEN TOWNSHIP BOARD OF
EDUCATION, et al.,

        Defendants.

Civil No. 05-0513 (RMB)

**OPINION**

APPEARANCES:

David A. Gies, Esq.
1230 Parkway Avenue
Suite 307
Ewing, New Jersey 08628
    Attorney for Plaintiff

Richard L. Goldstein, Esq.
Marshall, Dennehey, Warner, Coleman & Goggin
Woodland Falls Corporate Park
200 Lake Drive East, Suite 300
Cherry Hill, New Jersey 08002
    Attorneys for Defendants

**BUMB,** United States District Judge:

**Introduction:**

    This matter comes before the Court upon a motion for summary judgment by Defendants, Pennsauken Township Board of Education ("BOE") and William T. Clarke ("Clarke"), individually and in his official capacity, hereinafter collectively referred to as "Defendants".

On December 6, 2004, Leonard Carmichael ("Plaintiff") filed his Complaint in the Superior Court of New Jersey, Camden County alleging that Defendants have acted in violation of the New Jersey Law Against Discrimination, N.J. Stat. § 10:5-1 et seq. ("NJLAD"), and the New Jersey Conscientious Employee Protection Act, N.J. Stat. § 34:19-1 ("CEPA").  Plaintiff also claims that Defendants are liable pursuant to 42 U.S.C. § 1983 for depriving him of his constitutional rights and that Defendants have committed acts of common law negligence.

Plaintiff commenced this action in the Superior Court, Law Division, Camden County on December 4, 2004.  Defendants were served with a Summons and Complaint on January 3, 2005.  This matter was removed to this Court on January 25, 2005, pursuant to 28 U.S.C. § 1441.

**Factual Background:**

Harassing Phone Call

The following facts are undisputed.  Plaintiff began his teaching career with the Pennsauken Board of Education in 1988. (Defs.' Statement of Undisputed Material Facts ("SOF") at ¶ 1; Pl.'s Resp. to Defs.' SOF at ¶ 1).  From the 1990's through the present, Plaintiff taught and continues to teach keyboarding at Pennsauken High School. (Id.)  On March, 12, 2001, Plaintiff received a telephone message on his school voicemail which

stated, roughly, as follows:

> Voice #1 - Hey man. I'm gonna do something man...You
> keep on poppin shit- I'll put a gun to your
> head...(pause) Hey man...where ya going??? the
> bathroom? You a mack truck son...(pause)
>
> Voice #2 -...hey Mr. Carmichael...Where ya goin morrow
> Mr. Carmichael...You got any fresh eggs for me?? Some
> bacon???
>
> Voice #1- SHUT THE F---- UP!!! (Defs.' SOF at ¶ 5; P's
> Response SOF at  ¶ 2).

After receiving this message, Plaintiff went to the
Principal of Pennsauken High School, William Clarke, to report
it. (Defs.' SOF at ¶ 7; Pl.'s Resp. SOF at ¶ 4).  Either Clarke
or the Plaintiff contacted the Pennsauken Police Department and
Plaintiff made a formal complaint with the Police. (Defs.' SOF at
¶¶ 8 & 9; Pl.'s Resp. SOF at ¶4).  The Police were able to trace
the call back to its place of origin - a home phone number of
Alden Schultz, a student at Pennsauken High School. (Defs.' SOF
at ¶¶ 10 & 12; Pl.'s Resp. SOF at ¶4 & 6).

Following a police investigation, Plaintiff signed criminal
charges against Alden Schultz, Jay Riccardi and Craig Cairns, all
students at the High School. (Defs.'SOF at ¶ 18; Pl.'s Resp. SOF
at ¶ 8).  On November 18, 2002, Alden Schultz admitted to the
charge of harassment under N.J. Stat. § 2C:33-4a for the calls
made to Plaintiff. (Defs.' Ex. F).  On December 10, 2002, Schultz
was given "a six month rule conditioned on his attending school
with no unexcused absences or lateness, maintaining passing

3

grades, having no behavioral problems at home or school, and remaining drug and alcohol free." (Id.).

Following the imposition of the six month rule, Plaintiff checked Alden Schultz's records for the Spring 2003 semester and saw that Schultz had been tardy for classes - but that there were no disciplinary actions taken against Schultz; Plaintiff did not report the tardiness to anyone, including the Prosecutor's office.  (Defs.'SOF at ¶ 26 & 27; Pl.'s Resp. SOF at ¶ 10).

The March 12, 2001, harassing phone call constitutes the only incident/interaction between Plaintiff and Alden Schultz, Jay Riccardi, and Craig Cairns that was ever reported by Plaintiff to Clarke or Mr. Lewis, the School's Vice Principal. (Defs.'SOF at ¶ 33; Pl.'s Resp. SOF at ¶ 11).  The one time Plaintiff informed Vice Principal Lewis that he did not want to be in the Internal Suspension Room with Jay Riccardi, Mr. Lewis removed Plaintiff from the room without incident. (Defs.'SOF at ¶¶ 29, 30 & 31; Pl.'s Resp. SOF at ¶ 10).

Plaintiff's Coaching Position

Plaintiff coached the Girls' Track Team from 1988 through 2002; in April of 2002, Plaintiff resigned from his position. (Defs.'SOF at ¶¶ 34 & 35; Pl.'s Resp. SOF at ¶ 12).  The parties do not agree on the reason for the resignation.[1]

---

[1] Plaintiff testified at his deposition that he resigned following an incident where a student on the team "disrespected" him and he removed the student from the team.  Mr. Wright, the

In November 2002, following his resignation, Plaintiff applied for the posted Spring Girls' Track Coach position. (Defs.'SOF at ¶ 41; Pl.'s Resp. SOF at ¶ 15).  Plaintiff interviewed for the position with Mr. Wright, the school's Athletic Director.  (Defs.'SOF at ¶ 42; Pl.'s Resp. SOF at ¶ 15). Mr. Wright had no knowledge of the phone message incident between Plaintiff and Schultz.  (Defs.'SOF at ¶ 57; Pl.'s Resp. SOF at ¶ 21).  The other candidate for the coaching position was Ms. Parks, who had been coached by Mr. Wright when she was on the high school track team in Camden.  (Defs.'SOF at ¶ 45; Pl.'s Resp. SOF at ¶ 15).  On January 21, 2003, the decision was made to not offer the position to Plaintiff.  (Defs.'SOF at ¶ 46; Pl.'s Resp. SOF at ¶ 15).

Plaintiff requested a meeting to discuss why he had not been offered the position and, on February 11, 2003, a formal grievance was filed; this grievance was denied by Superintendent Quint.  (Defs.'SOF at ¶¶ 48-51; Pl.'s Resp. SOF at ¶ 17).  The Superintendent indicated that Plaintiff was not recommended for the position because evaluations of Plaintiff between 1999 and 2002 showed that he needed to improve attendance at a clinic for coaches, improve the number of participants in the Girls' Spring Track and Field Program, improve the team website and bulletin

---

Athletic Director, overruled this decision, angering Plaintiff. (Pl.'s Depo. at 148-155).

5

board, improve the academic and physical status of the team members and needed to consistently submit nominations for Athlete of the Week.  (Defs.' Ex. J).  Plaintiff appealed the denial of his grievance on June 12, 2003, and the Board of Education again denied it.  (Defs.' Ex. K).

Plaintiff filed the instant action on December 6, 2004, asserting that Defendants failed to take effective remedial measures to end discriminatory treatment and that he was retaliated against for making his complaints when Defendants refused to nominate and appoint him varsity head coach in violation of the NJLAD and CEPA.  Plaintiff also asserts that Defendants are liable pursuant to 42 U.S.C. § 1983 because they failed to investigate or discipline the students and that Defendants have committed acts of common law negligence.

**Summary Judgment Standard:**

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[2]  Fed. R. Civ. P. 56(c).  In deciding whether there is a

---

[2] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  See id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  See id.

disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'"  <u>Hunt v. Cromartie</u>, 526 U.S. 541, 552 (1999) (<u>quoting</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986)).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[3] <u>Liberty Lobby</u>, 477 U.S. at 250; <u>Brewer v. Quaker State Oil Ref. Corp.</u>, 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

**Discussion:**

<u>Plaintiff's Claims Pursuant to 42 U.S.C. § 1983</u>

   a. *State-Created Danger*

   Defendants argue that Plaintiff's claim pursuant to 42 U.S.C. § 1983 for violations of his substantive due process rights are without merit and must be dismissed.  (Defs.' Br. at 4).  When bringing an action under 42 U.S.C. § 1983, a Plaintiff

---

   [3] The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Hugh v. Butler County Family YMCA</u>, 418 F.3d 265, 267 (3d Cir. 2005).

must satisfy a two-prong test showing that: 1) the conduct complained of was committed by a person acting under color of state law, and 2) the conduct deprived that person of rights guaranteed by the United States Constitution.  <u>Parratt v. Taylor</u>, 451 U.S. 527 (1981).  In the matter at hand, the constitutional rights at issue are those guaranteed by the Fourteenth Amendment, which states, in relevant part, that no State shall "deprive any person of life, liberty, or property, without due process of law."  <u>U.S. Const. Amend. XIV, Art.1, Clause 3</u>.

First and foremost, Defendants assert that Plaintiff cannot point to any viable property interest guaranteed by the Constitution.  This assertion is bolstered by case law which states that the right to pursue employment free from emotional health risks from verbal harassment does not warrant substantive due process protection. <u>Santiago De Castro v. Morales Medina,</u> 943 F.2d 129 (1st Cir. 1991).  While Plaintiff's brief seems to imply that the state statute, N.J. Stat. Ann. § 18A:37-2, which requires a school principal to report an alleged assault by a pupil, supports a basis for his § 1983 claim, the Third Circuit has stated that "a violation of a state law duty, by itself, is insufficient to state a § 1983 claim." <u>D.R. Middle Bucks Area</u> <u>Vocational Tech. Sch</u>. 972 F. 2d 1364, 1375 (3d Cir. 1992).[4]

---

[4] Moreover, this Court is not convinced that this statute even applies to the Plaintiff's situation.

Plaintiff also argues that he has presented a viable claim
under 42 U.S.C. § 1983 pursuant to the "state-created danger
theory."  This theory states that "[w]here a state actor creates
a danger and renders an individual more vulnerable to it, the
individual has a substantive due process right to state
protection."  (Pl.'s Br. at 8-9).  To state a claim based on such
a theory, a plaintiff must show:

> 1) the harm ultimately caused was foreseeable and fairly
> direct;
>
> 2) a state actor acted with a degree of culpability that
> shocks the conscience;
>
> 3) a relationship between the state and the plaintiff
> existed such that the plaintiff was a foreseeable victim of
> the defendant's acts, or a member of a discrete class of
> persons subjected to the potential harm brought about by the
> state's actions, as opposed to a member of the public in
> general; and
>
> 4) a state actor affirmatively used his or her authority in
> a way that created a danger to the citizen or that rendered
> the citizen more vulnerable to danger than had the state not
> acted at all.

Sanford v. Stiles, 456 F.3d 298 (3d Cir. 2006) (citing Bright v.
Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006) (internal
quotation marks and footnotes omitted)).

Plaintiff asserts that both the Board of Education and
Clarke are liable under the state-created danger theory because
"they did not take any action to discipline the student who
confessed, let alone the two others who were probably involved,
allowing the students to feel free to subsequently intimidate

9

[Plaintiff] and causing [him] to emotionally withdraw from school activities." (Pl.'s Br. at 9).[5]

Construing the evidence before this Court in a light most favorable to Plaintiff, the non-moving party, this Court holds that Defendants are entitled to summary judgment on this issue; there is no issue of fact as to whether the Defendants acted with the requisite level of culpability or whether the Defendants created such a danger alleged or rendered Plaintiff more vulnerable to danger.[6]

(i) Level of Culpability

Defendants argue that in order for a government official to violate substantive due process, he must act in a manner that "shocks the conscience." (Defs.' Br. at 5-6). Plaintiff counters by saying that the requisite level of culpability is deliberate indifference. (Pl.'s Br. at 12).

The Third Circuit recently clarified the requisite level of culpability required in these types of cases in Sanford v.

---

[5] By Plaintiff's own admission, the harm alleged is purely emotional, consisting of "anger and depress[ion]." (Id. at 11).

[6] Because there is no genuine issue of material fact regarding the second and fourth prongs of the test, as addressed below, the Court need not address the other factors. See Sanford, 456 F.3d at 305 n.6 (affirming district court's grant of summary judgment on state created danger theory of liability where plaintiff could not establish prongs two and four of the test).

<u>Stiles</u>, 456 F.3d 298 (3d Cir. 2006).  While the Third Circuit acknowledged that, in the past, it had looked to whether the state actor acted in "willful disregard for the safety of the plaintiff", it held, in light of the Supreme Court's decision in <u>Sacramento v. Lewis</u>, 523 U.S. 833, 849 (1998), that the appropriate inquiry is whether the state actor acted with a degree of culpability that "shocks the conscience." <u>Id.</u> at 305. Therefore, "in <u>any</u> state-created danger case, the actor's behavior must <u>always</u> shock the conscience." <u>Id.</u> at 310.  The Court went on to add that "what is required to meet the conscience-shocking level will depend upon circumstances of each case, particularly the extent to which deliberation is possible." <u>Id.</u>  Overall, the Third Circuit made clear that "[t]he level of culpability required to shock the conscience increases as the time state actors have to deliberate increases." <u>Id.</u> at 309.  In other words, in cases where deliberation is possible and state actors have the time to make unhurried judgments, deliberate indifference will suffice.  <u>Id.</u>

Even if the deliberate indifference standard is applied, however, Plaintiff is unable to meet his burden of showing that the acts or omissions of Clarke and/or the Board of Education, in response to Plaintiff's report of the harassing phone call, "shock the conscience."  Defendants did not simply ignore Plaintiff's report of the harassing phone call - the police were

11

promptly contacted and an investigation began in response to
Plaintiff's formal complaint.  Plaintiff admits that Clarke
called the telephone number from where the threatening call
originated.  (Pl.'s Resp. to Defs.' SOF at ¶ 5).  Therefore,
Defendants cannot be said to have disregarded any risk that the
students might have presented - instead, the Defendants left the
matter in the hands of the police who pursued an investigation.
For this reason, this Court cannot conclude that Defendants'
conduct shocked the conscience. <u>See</u> <u>Sanford v. Stiles</u> 456 F.3d
298, 311 (3d Cir. 2006) (finding that Plaintiff could not show
deliberate indifference where it could not be said that
Defendants simply ignored or disregarded a suicide note of
student).

   (ii) Greater Danger Prong

   Moreover, even if Plaintiff could show the requisite level
of culpability, Plaintiff's state-created danger claim cannot
survive summary judgment as Plaintiff has not presented
sufficient evidence to demonstrate that Defendants' alleged
failure to investigate/discipline the students placed Plaintiff
"in greater danger than [he] had already faced such that the
state can be said to have 'created' the danger." <u>Hansell v. The</u>
<u>City of Atlantic City</u>, 152 F. Supp. 2d 589 (D.N.J. 2001).

   In analyzing the last of the above-listed factors, the

12

decision in <u>Hansell v. The City of Atlantic City</u>, 152 F. Supp. 2d
589 (D.N.J. 2001), is particularly instructive to this Court.[7]

In <u>Hansell</u>, Defendant police officers of the Atlantic City
Police Department ("ACPD") failed to investigate a domestic
violence complaint asserted in October 1995, by Donna Hansell
against her former husband, Lawrence James D'Allesandro, after he
had threatened to shoot the couple's son.  <u>Id.</u> at 595.  On March
5, 2006, D'Allesandro, intoxicated and wearing a bullet proof
vest, went to his ex-wife's residence, where she lived with her
new husband and several children.  <u>Id.</u>  D'Allesandro then
proceeded to discharge his revolver at the front door to gain
entry and then held Donna Hansell's husband and several children
hostage until D'Allesandro voluntarily surrendered.  <u>Id.</u>

While there were no physical injuries, plaintiffs'
psychiatric expert testified that the plaintiffs suffered from
post-traumatic stress disorder, depressive and anxiety symptoms
as a result of 1996 shooting incident.  <u>Id.</u> at 600-01.
Plaintiffs advanced numerous theories of liability pursuant to §
1983, including, <u>inter alia</u>, the state-created danger theory.
<u>Id.</u> at 602.

The court concluded that the plaintiffs could not survive
summary judgment on the state-created danger theory because they

---

[7] While Plaintiff cites cases for the basic test for state-
created danger, he does not provide this Court with any citations
to cases which support his theory of liability.

failed to raise a triable issue of fact as to whether the ACPD officers increased plaintiffs' vulnerability to harm under the fourth prong of the test. Id. at 605. Plaintiffs contended that the defendants' failure to investigate the domestic violence complaint increased the risk of harm. The court ultimately held, however, that there was no evidence that the failure to investigate placed the plaintiffs in greater danger than they had already been because there was no evidence of any affirmative conduct by the ACPD officers that "would have enhanced Mr. D'Allesnagro's feeling of invunerability." Id. at 608.

As in Hansell, Plaintiff, in the instant action, has presented no evidence to support his assertion that the Defendants' failure to investigate/discipline the students increased those students feeling of invulnerability thereby placing Plaintiff in greater danger. In fact, the only evidence of alleged harmful incidents that occurred after Plaintiff complained of the harassing phone call involve his vague allegations that the students involved in the phone call incident would walk by Plaintiffs classroom or see him in the hall and ask him to shake their hands and laugh sarcastically, which, notably, Plaintiff did not report to Defendants. (Pl.'s Depo. at p. 98). Plaintiff has produced no evidence that the inaction of Defendants "created" the alleged danger. See D.R. v. Middle Bucks Area Vocational Technical School, 972 F.2d 1364 (3d Cir.

14

1992)(declining to find liability under the state-created danger theory where school defendants allegedly increased the risks of harm to students, who had been sexually molested by other students).

Moreover, Plaintiff's brief alleges that it is the Defendants' failure to discipline the students which constitutes the basis of the state-created danger theory. (Pl.'s Br. at 9). Because failures to protect alone, however, cannot form the basis of a violation of a due process violation pursuant to the state-created danger theory, Plaintiff cannot satisfy the fourth prong of the test. See Bright v. Westmoreland County, 443 F.3d 276, 282 (3d Cir. 2006) ("[i]t is the misuse of state authority, rather than the failure to use it, that can violate the Due Process Clause."); Sanford, 456 F.3d at 312 (holding that the defendants failure to prevent a student's suicide could not be re-characterized as an affirmative action and, thus, did not form the basis of a due process violation).  Because Plaintiff cannot satisfy either the second or fourth prongs of the test, Defendants are entitled to summary judgment on this claim.

   b. *First Amendment*

Plaintiff alternatively asserts, notably for the first time in his opposition to Defendants' motion, that the fundamental constitutional interest he was deprived of is pursuant to the

First Amendment because, "[s]afety in the workplace is a matter of public concern and speech regarding safety is protected under the First Amendment." (Pl.'s Br. at 11).[8]  Plaintiff argues that his First Amendment rights were violated when he was "retaliated" against for reporting the threatening phone message and for asking about the investigation. (Pl.'s Br. at 11).  The forms of alleged retaliation include the following: Clarke's failure to discipline the students involved in the incident; telling Plaintiff, when he inquired about the investigation, to "let it go"; when his classrooms were not provided with new computers; the fact that he was not allowed to participate in a Disney academic program; and, that he was not reassigned to his former coaching position after his resignation.  (Pl.'s Br. at 12 & 14).

In order for an employee's speech to be protected from retaliation under the First Amendment, it must be a matter of public concern and, if it is, the Court must ask whether the "employee's interest in the speech outweighs the state's countervailing interest as an employer in promoting workplace efficiency and avoiding workplace disruption." McGreevy v. Stroup, 413 F.3d 359, 364 (3d Cir. 2005).

The analysis of a First Amendment retaliation requires a three-part inquiry: 1) the speech must be on a matter of public concern; 2) the plaintiff must show that the protected activity

_____

[8] The Court requested supplemental briefing on this issue.

was a substantial or motivating factor in the alleged retaliatory
action; and 3) if the plaintiff establishes the first two prongs,
the defendant may rebut by showing it would have made the same
adverse employment decision regardless of the protected activity.
Smith v. Central Dauphin School Dist., 419 F. supp. 2d 639, 646
(M.D. Pa. 2005). Moreover, in order to be actionable under §
1983, the retaliatory conduct must "'deter a person of ordinary
firmness' from exercising his First Amendment rights." Suppan v.
Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)(quoting Bart v.
Telford, 677 F.2d 622, 625 (7th Cir. 1982)).

Whether an exercise of speech is on a matter of public
concern is a question of law. Curinga v. City of Clairton, 357
F.3d 305, 310 (3d Cir. 2004). A public employee's speech
addresses a matter of public concern when it relates to an issue
of "political, social, or other concern to the community."
Connick v. Myers, 461 U.S. 138, 146 (1983). It has also been
defined as "something that is a subject of legitimate news
interest; that is, a subject of general interest and of value and
concern to the public at the time of publication." City of San
Diego v. Roe, 543 U.S. 77, 83-84 (2004).

In evaluating whether the speech at issue is protected, the
Court must look to the "content, form, and context of the
activity in question." Baldassare v. New Jersey, 250 F.3d 188,
195 (3d Cir. 2001). The speech at issue in the instant matter is

17

Plaintiff's complaint to Defendants regarding the investigation of the harassing phone call which he characterizes as related to "safety in the workplace". (Pl.'s Br. at 11).  According to Plaintiff's deposition testimony, he would pass Clarke in the hallway of the school and ask "what are you going to do about these students who made the threatening phone call?," and Clarke would reply that Plaintiff had to wait until the end of the court hearing to find out what was going to happen with the students. (Pl.'s Depo. at 95-96).  Plaintiff testified at deposition that he discussed this issue with Clarke "two or three, four times maybe." Id.

Speech may be uttered in a private forum and still be protected under the First Amendment. Bradshaw v. Township of Middletown, 296 F. Supp. 2d 526 (D.N.J. 2003)(citing Azzaro v. County of Allegheny, 110 F.3d 968, 977 (3d Cir. 1997)).  However, merely asking Clarke about the status of the investigation indicates that Plaintiff's inquiries were based on his personal concerns regarding the incident, not the safety of the school community at large. Bradshaw, 296 F. Supp. 2d at 538 ("speech pertaining to private grievances not of interest to the public at large is not speech on a matter of public concern").

While matters stemming from areas of private concern may be protected pursuant to the First Amendment, such protection only inures "if it addresses a matter that concerns the public as well

18

as the speaker." <u>Brennan v. Norton</u>, 350 F.3d 399, 413 (3d Cir. 2003).  Plaintiff indicates in his deposition testimony that "I asked Mr. Clarke what he was going to do about <u>this</u> situation with <u>this</u> student." (Pl.'s Depo. at 86:14-14) (emphasis added). Plaintiff does not allege that he expressed concerns regarding future incidents of violence against himself or other teachers. In the instant action, Plaintiff was merely asking, "what's going on?" regarding his personal issue with the investigation of the students, which does not rise to the level of a matter of public concern and thus is not an activity protected by the First Amendment.  <u>See</u> <u>Kadetsky v. Egg Harbor Township Bd. Of Ed.</u>, 164 F. Supp. 2d 425 (D.N.J. 2001) (finding that plaintiff, a tenured high school teacher, was not engaged in protected speech despite plaintiff's attempts to characterize his speech as addressing a matter of public concern where the record indicated that plaintiff was motivated by personal concerns).

Plaintiff now attempts to paint his inquiries regarding retribution/punishment of the students related to the phone call incident as a global inquiry of public concern based on the school's duty to respond to threats of student violence.[9] However, Plaintiff admitted that some of his inquiries were in

---

[9] At oral argument, Plaintiff's counsel only presented the gravity of the problem of school violence as an indicia that the speech was of public concern.  No additional arguments regarding the context, form or content of the speech were made.

reaction to the punishment of the student indicating that it was
not public concern but personal interest that was the basis of
his speech.  While not necessarily dispositive, an inquiry into a
speaker's motivation "is relevant to the extent that it indicates
whether the speaker is speaking as 'a citizen upon matters of
public concern' or as a volunteer 'upon matters only of personal
interest.'" Versage v. Township of Clinton New Jersey, 984 F.2d
1359, 1364 (3d Cir. 1993)(quoting Connick, 461 U.S. at 147).
Here, Plaintiff's motivation is seen in instances such as the
following: when Plaintiff learned that the student was convicted,
he asked Clarke what he was going to do and Clarke replied that
the students had already been punished.  (Pl.'s Depo. at 103-
104).  Plaintiff indicated that this made him angry because of
the way he was treated - "I was mad...I knew there was other
teachers [sic] that got threatened and they suspended kids right
away." (Id.).

    Overall, an examination of the record as a whole, including
the content, form and context of the speech, reveals that
Plaintiff "did not seek to inform the public that the [Defendants
were] not discharging [their] governmental
responsibilities...nor...seek to bring to light actual or
potential wrongdoing or breach of public trust." Gaj v. United
States, 800 F.d 64 (3d Cir. 1986) (quoting Connick, 461 U.S. at
148).  Moreover, Plaintiff was motivated by personal reasons

rather than "a desire to expose errant school policies or
malfeasance on the part of his superiors for the betterment of
the public." <u>Kadetsky</u>, 164 F. Supp. 2d at 435.  Therefore,
taking all the evidence into consideration and ever mindful that
"[t]o presume that all matters which transpire within a[] [public
school] are of public concern would mean that virtually every
remark...would plant the seed of a constitutional case", this
Court cannot conclude that Plaintiff's speech was a matter of
public concern.  <u>Id.</u> at 434 (quoting <u>Connick</u>, 451 U.S. at 149).[10]

     Even if this Court were to construe Plaintiff's inquiries as
matters of public concern that outweigh the Defendants'
countervailing interests, the evidence in front of this Court
shows there is no issue of fact as to whether the protected
activity was a substantial or motivating factor in the alleged
retaliatory actions.[11]  There is no evidence currently in front
of this Court that would support the conclusion that Plaintiff's
report of the harassing phone call and/or inquiries regarding an
investigation resulted in Defendants' alleged failure to

_____

     [10] Because Plaintiff's speech does not touch on a matter of
concern, the Court need not engage in the <u>Pickering</u> balancing
test.  <u>City of San Diego v. Roe</u>, 543 U.S. 77, 82-83 (2004) ("in
order to merit <u>Pickering</u> balancing, a public employee's speech
must touch on a matter of 'public concern.'").

     [11] The Court notes that Plaintiff does not even address this
point in his supplemental papers but rather merely addresses
whether the speech is a matter of public concern that outweighs
the Defendants' interests.

discipline the students, Clarke's telling Plaintiff to "let it go", the decision not to re-hire Plaintiff as coach, the Disney honorarium situation or the lack of new computers.

In order to draw a causal connection between the protected activity and the alleged retaliation, Plaintiff must demonstrate more than his "myopic interpretation of events wherein retaliatory motives permeated the [D]efendants' every move." Brennan v. Norton, 350 F.3d 399, 420 (3d Cir. 2003). Additionally, courts have required that the nature of the retaliatory acts committed be more than de minimis or trivial; instead,

> [a] public employer adversely affects an employee's First Amendment rights when it refuses to rehire an employee because of the exercise of those rights or when it makes decisions, which relate to promotion, transfer, recall and hiring, based on the exercise of an employee's First Amendment rights.  On the other hand, courts have declined to find that an employer's actions have adversely affected an employee's exercise of his First Amendment rights where the employer's alleged retaliatory acts were criticism, false accusations, or verbal reprimands.

Id.

First, Plaintiff alleges that he was retaliated against because the Defendants failed to discipline the students.  In addition to the fact that this act does not relate to hiring or promotion, it is also clear from the record, and Plaintiff admits, that while the Defendants may not have disciplined the students, they did not respond with discipline because they were

22

"waiting for the criminal investigation to be completed." (Pl.'s Depo. at 96:16-17). This is not a case where the Defendants told Plaintiff to be satisfied with nothing, instead, they left the discipline in the hands of the police and the prosecutor's office and the student was indeed punished.[12] Moreover, when Plaintiff was asked "Were you satisfied with the investigation and the results of the investigation conducted by the Pennsauken Police Department?" he answered "Yes, I was." (Pl's Depo. at 75:8-11). Just because Plaintiff alleges that he was not pleased with the actions of the Defendants does not mean the actions taken (or not taken) were in any way in retaliatory. There is no evidence before this Court that Defendants' actions or lack thereof were in anyway connected to Plaintiff's complaint/inquiries.

Plaintiff also asserts that he was retaliated against when Clarke told him to "let it go" in response to his investigation inquiries. This type of comment, however, does not rise to the level of an action that could adversely affect Plaintiff's exercise of his First Amendment rights. See Brennan v. Norton, 350 F.3d 399 (3d Cir. 2003). In its Brennan decision, the Third Circuit stated that "courts have declined to find that an

_____

[12] At oral argument, Plaintiff's counsel argued that the fact that Defendants merely told Plaintiff to wait for the investigation to be completed instead of saying that the matter was best left in the hands of the police is somehow evidence of the causal connection between the speech and the alleged retaliation. This Court fails to see how this alleged distinction helps Plaintiff draw the required causal connection.

employer's actions have adversely affected an employee's exercise
of his First Amendment rights where the employer's alleged
retaliatory acts were criticism...or verbal reprimands." Id.
(citing Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 686 (4th
Cir. 2000)).  At most, the comment "let it go" can be construed
as a verbal reprimand.  And, even if considered a reprimand,
Brennan instructs that this type of comment does not rise to the
level of an action that adversely affects an employee and is,
thus, not actionable.

Plaintiff also insists that Defendants retaliated against
him when he was not given a new set of computers.  However,
Plaintiff has presented no evidence demonstrating a causal nexus
between his activity and the alleged retaliatory refusal to
provide his classroom with new computers after the phone call
incident in 2001.  In fact, Plaintiff stated in his deposition
that he has never gotten new computers - including the years
prior to the harassing phone call incident.  (See Pl.'s Depo. at
129-132).  Moreover, Plaintiff testified that the computers in
his classroom are still working and that he never requested new
computers.  (Id. at 134 & 136).

Plaintiff has presented no evidence whatsoever in his papers
or during oral argument to connect the lack of new computers in
his classroom to the 2001 incident or his inquiries to Clarke
regarding disciplining the students.  There is also nothing in

24

the record indicating that the persons who make the decisions regarding the distribution of computers had any knowledge about the 2001 incident.

Plaintiff also makes somewhat vague allegations that he was not allowed to participate in a Disney-run program for excellent teachers because of his speech. Again, there is no evidence showing any causal connection between Plaintiff's report of the incident or inquiries regarding the investigation and the fact that Plaintiff was not able to participate. In fact, Plaintiff's deposition testimony indicates that the application was reviewed by the Assistant Superintendent and that Clarke took the information to him. (Pl.'s Depo. at 129). There is no evidence that the Assistant Superintendent was aware of Plaintiff's speech. While the reasons why Plaintiff may not have been able to participate are not entirely clear, Plaintiff's counsel, when pressed at oral argument to connect this decision to the 2001 incident, failed to provide any arguments indicating the required causal connection.

Plaintiff's allegation that he was not re-hired as track coach as a result of his speech is clearly the type of decision that adversely affected his employment.[13]  See Brennan, 350 F.3d at 419.  However, there is no evidence connecting Plaintiff's

_____

[13] Plaintiff resigned from his position as track coach following an incident in which the school administration did not support his decision discipline a student on the team.

25

speech to the decision not to rehire him.  In fact, Plaintiff has admitted that Mr. Wright, the school's Athletic Director with whom Plaintiff interviewed for the position, had no knowledge of the phone call incident between the Plaintiff and the students. (Pl.'s Resp. SOF at ¶ 21).  This admission undercuts Plaintiff's assertion that he was not re-hired because of speech regarding the phone call incident.  See Kadetsky, 164 F. Supp. 2d at 434 (D.N.J. 2001) (finding that claims of retaliation were without merit where individual who allegedly retaliated against Plaintiff had no knowledge that plaintiff had filed a grievance). Additionally, there is no evidence that the committee that made the decision was aware of the speech.[14]  Moreover, contrary to Plaintiff's indication in his deposition that he mentioned the 2001 incident in his formal grievance, a review of the grievance itself reveals that there was no mention of the incident whatsoever.  (Pl.'s Ex. at 22).

Overall, construing the evidence in a light most favorable

---

[14] At oral argument, it was established that a committee made the decision.  While Plaintiff argues that the fact that Plaintiff is unsure of who is on the committee somehow establishes the causal connection, he points to no evidence supporting this allegation.  At the summary judgment stage, "[t]he non-movant may not rest upon mere allegations, general denials, or vague statements. When opposing a motion for summary judgment, the party bearing the burden of persuasion in the litigation is obligated to identify those facts of record which would contradict the facts identified by the movant." Port Auth. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002). Plaintiff does not bear his burden.

to Plaintiff, there is no causal connection between Plaintiff's
reporting of the phone call incident and inquiries regarding the
investigation and the decision not to re-hire him.  Defendants
are entitled to summary judgment on Plaintiff's First Amendment
Claim.[15]

Because there is no issue of fact as to whether Defendants
have violated Plaintiff's constitutional rights pursuant to the
First Amendment or the state-created danger theory, Defendants
are entitled to summary judgment on Plaintiff's § 1983 claims.


State Law Claims

a. New Jersey Law Against Discrimination

By deciding that there is no issue of fact as to whether
Plaintiff has demonstrated a causal connection between his
complaint regarding the harassing phone message/his related
inquiries regarding student discipline and the Defendants'
alleged retaliatory acts, this Court has necessarily decided that
Plaintiff's New Jersey Law Against Discrimination ("NJLAD") and
Conscientious Employee Protection Act ("CEPA") claims cannot
survive summary judgment.

Plaintiff's NJLAD claim asserts that the Board of Education

---

[15] Because this Court has held that no constitutional right
has been violated, it need not address Defendants' municipal
liability and qualified immunity arguments.  See Sanford v.
Stiles, 456, F.3d 298, 314 (3d Cir. 2006).

27

retaliated against him because he reported a student threat and asked about student discipline.  (Pl.'s Br. at 14).   In order to establish a prima facie case for retaliation under the NJLAD, Plaintiff must demonstrate that 1) the employee engaged in a protected activity; 2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and 3) a causal link exists between the employee's protected activity and the employer's adverse action.  <u>Abramson v. William Paterson College of New Jersey</u>, 260 F.3d 265, 286 (3d Cir. 2001).

The alleged protected activity underlying this NJLAD claim is the same as that upon which Plaintiff based his First Amendment retaliation claim.  As discussed at length above, there is no evidence in front of this Court demonstrating an issue of fact surrounding a causal connection between Plaintiff's activity and the alleged retaliation.  For that reason, Defendants are entitled to summary judgment on Plaintiff's NJLAD claim.[16]

   *b. Conscientious Employee Protection Act*

The same analysis proves fatal for Plaintiff's Conscientious Employee Protection Act ("CEPA") claim.  In order to demonstrate a CEPA violation, Plaintiff must show, (1) that he reasonably believed that his employer's conduct was violating either a law

---

[16] Because this Court holds there is no NJLAD violation, it need not reach Plaintiff's aiding and abetting arguments regarding Defendant Clarke.

or a rule or regulation promulgated pursuant to law; (2) that he performed whistle-blowing activity described in [CEPA]; (3) an adverse employment action was taken against him; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.  Blackburn v. UPS, Inc., 179 F.3d 81, 92 (3d Cir. 1999) (quoting Kolb v. Burns, 727 A.2d 525, 530, (N.J. Super. Ct. App. Div. 1999)).

Again, the alleged whistle-blowing activities here are Plaintiff's complaints/inquiries regarding discipline of the students for the 2001 incident. (Pl.'s Br. at 17).  Because there is no causal connection between Plaintiff's activity and the alleged retaliatory action, as discussed above, Plaintiff cannot establish a prima facie case for a CEPA violation - Defendants are entitled to summary judgment.

*c. Negligence*

Plaintiff also asserts a common law tort claim of negligence against the Defendants.  (Pl.'s Comp. at 6-7).  As discussed by Plaintiff's counsel at oral argument, Plaintiff believes that N.J. Stat. Ann. § 18A:37-2.1 creates a duty and, that by failing to comply with the statute, Defendants somehow breached that duty of care.[17]  In response, Defendants argue that Plaintiff's tort claim is barred by the New Jersey Tort Claims

---

[17] Again, the Court notes, without deciding, that it does not necessarily agree that this statute is at all applicable to the facts in this case.

Act, N.J. Stat. Ann. §§ 59:1-1 to 12-3, ("NJTCA").

Pursuant to the NJTCA, a complaining party must give a
public entity notice of a "'claim relating to a cause of action
for...injury or damage to person or property' against a public
entity or public employee." Velez v. City of Jersey City, 180
N.J. 284, 293 (2004)(citing N.J. Stat. Ann. 59:8-8)(emphasis in
original). "A suit will be dismissed if the claimant did not
provide a notice of claim to the entity within ninety days of the
'accrual of a cause of action.'" Lassoff v. State of New Jersey,
414 F. Supp. 2d 483 (D.N.J. 2006) (quoting N.J. Stat. Ann. §
59:8-8).

Plaintiff does not dispute that such a notice was not filed
and that the time for doing so has expired. Instead, Plaintiff
argues that this cause of action is somehow exempt from the NJTCA
because the claim is based on a statutory duty. The statute at
issue, however, N.J. Stat. Ann. § 18A:37-2.1, provides no private
cause of action. It is therefore clear to this Court that this
is a negligence action clearly subject to the NJTCA.[18] Because
this negligence action against both the Board and Clarke is
governed by the NJTCA and Plaintiff has failed to comply with the
applicable notice provisions, the claim must be dismissed. See
Velez, 180 N.J. at 296 (stating that basic common law tort

_____

[18] Plaintiff's complaint frames this count as a negligence
action and Plaintiff's counsel admitted at oral argument that the
cause of action was based in tort.

claims, are not excluded from the notice requirements); <u>Lassoff</u>, 414 F. Supp. 2d at 490 (dismissing claims against a State Trooper in his individual capacity because Plaintiff filed to comply with the NJTCA).

**Conclusion:**

For the aforementioned reasons, this Court has concluded that there are no issues of material fact regarding any of the Plaintiff's allegations.  Therefore, Defendants' motion for summary judgment will be granted <u>in</u> <u>toto</u>.

An accompanying Order shall issue this date.

Dated: <u>November 27, 2006</u>                    <u>s/Renée Marie Bumb</u>
                                                RENÉE MARIE BUMB
                                                United States District Judge